**39 So.2d 441**

**H. & H. TRANSP. CO., Inc. v. OWENS et al.**

**No. 38582.**

Feb. 14, 1949.

Meadors, Shaw & Meadors, of Homer, for plaintiff and appellant H. & H. Transp. Co.

Foster, Hall & Smith and Marlin Risinger, Jr., all of Shreveport, for third opponent and appellant Tri-State Drilling Mud Service.

Smitherman, Smitherman & Purcell, of Shreveport, for intervenor and third opponent Mid Continent Supply Co.

Seals & Atkins, of Homer, and Lee & Emery, of Shreveport, for third opponent and appellant International Derrick & Equipment Co.

T. H. McEachern, of Homer, and James H. Trousdale, Jr., of Monroe, for third opponent and appellee Jim McMurrey.

MOISE, Justice.

This litigation is over the proceeds realized from a sheriff's sale of a drilling rig and equipment formerly owned by the defendant, H. C. Owens.

On April 30, 1945, H. C. Owens purchased a drilling rig on terms of credit from Jim McMurrey, intervenor and third opponent. For the purchase price of the rig, Owens executed three promissory notes, each for $5,416.67, dated April 30, 1945, secured by a vendor's lien and chattel mortgage on the property described as follows: "One 112 foot Parkersburg Steel Drilling Derrick with steel substructure; together with one Rotary Drilling Rig complete." (The derrick was not delivered and an adjustment was subsequently made.) In this act there is the following in relation to the location of the rig: "The property described presently within the Parish of Catahoula, Louisiana, is to be located and employed by the purchaser in the Parish of Claiborne, Louisiana." This act was recorded in Claiborne Parish, La., on the following day, May 1, 1945.

Two wells were drilled by the defendant in Claiborne Parish, Creighton No. 1 and

Muslow No. 1. Creighton No. 1 was begun sometime in May, 1945, and was abandoned as a dry hole about the end of October, 1945. The rig was then moved to the second location, a little more than a mile away, and the drilling of Muslow No. 1 was started sometime after November 1, 1945. This well was also abandoned as a dry hole after February 9, 1946.

In drilling Creighton No. 1, Owens bought materials and supplies from intervenor and third opponent, International Derrick and Equipment Company, amounting to $14,626.30. More than ninety days elapsed from the date of this company's last invoice for supplies to Creighton No. 1 and the filing of its lien on March 8, 1946. No other creditor here involved furnished services, supplies or materials for this first well.

In connection with the drilling of Muslow No. 1, International Derrick and Equipment Co. furnished materials and supplies amounting to $89.56; H. & H. Transportation Co. (plaintiff) furnished services amounting to $3,300.32; Tri-State Drilling Mud Service (intervenor) furnished materials and supplies amounting to $1,023.13; and Mid Continent Supply Co. (intervenor) furnished materials and supplies amounting to $2,240.67. Materialmen's liens were filed within 90 days of last delivery to Muslow No. 1 by these four companies.

H. & H. Transportation Co., Inc., brought this suit to enforce payment of its claim.

obtained judgment and proceeded to execution. The intervening creditors opposed this execution by way of third opposition. Owens did not defend the suit. The property subject to the lien was sold at judicial sale and $7,375 was realized thereon. The contest is between the creditors as to the distribution of this amount.

Three of the creditors, namely, the H. & H. Transportation Company, Inc. (plaintiff), Tri-State Drilling Mud Service, and Mid Continent Supply Company (intervenors and third opponents), have recognized the equality of rank of their respective claims and are urging their objections to claims made by intervenors and third opponents Jim McMurrey and International Derrick and Equipment Company. McMurrey is claiming priority over plaintiff as well as intervenors on the basis of a vendor's lien embraced within the act of mortgage, describing the property as set out above. The International Derrick & Equipment Co. claims that the filing of its lien within ninety (90) days of the last delivery to Muslow No. 1 covered its claim also for materials furnished Creighton No. 1, since both wells were in the same field, were successively drilled, and the furnishing of supplies constituted a continuous transaction.

The trial court recognized the superiority of McMurrey's vendor's lien and ordered that the proceeds from the sale of a portion of the property, separately appraised and sold as being subject to said lien, be paid

to McMurrey. Plaintiff and the other intervenors and third opponents have appealed. McMurrey has answered the appeal, asking that the judgment be amended to assess plaintiff with the costs of court, and as thus amended, that the judgment be affirmed.

The materialmen claim by virtue of the provisions of Act No. 68 of 1942, which provides for liens in favor of laborers and furnishers of supplies for labor done and supplies furnished in connection with the drilling of oil, gas and water wells. On this subject the pertinent provisions of Act No. 145 of 1934 (later amended by Act 100 of 1940 and Act No. 68 of 1942) read as follows:

"* * * such lien and privilege shall be superior to all other liens and privileges or mortgages against said property, except taxes or a bona fide vendor's lien and privilege, provided such vendor's lien and privilege exists and is recorded before the work, labor, service, trucking, towing, barging, repairing, or the furnishing of fuel, drilling rigs, standard rigs, material or supplies is begun."

The district judge found that Act No. 68 of 1942 omitted in Section 2 of the general provisions "provided such vendor's lien and privilege exists and is recorded before the work, labor, service, trucking, towing, barging, repairing, or the furnishing of fuel, drilling rigs, standard rigs, material or supplies is begun", and in lieu of this broad provision requiring recordation of

the vendor's lien, the following section was added:

"Section 2-B. That as to movable property said vendor's lien and privilege must exist and be filed for record within seven days after said property, subject to the vendor's lien and privilege, is delivered to the well or wells. Said vendor's lien and privilege shall be evidenced by a written instrument signed by the purchaser and when authentic in form or duly acknowledged, shall be filed for record in the records of the parish where the well or wells is located. The effect of said filing shall prevent said movables from becoming immovable by nature or destination. The property shall be described in such a manner as to be reasonably subject to identification and the premises on which the property is located or is to be located shall be stated. Filing, recordation and preservation shall be in the same manner and form and in the same book as now provided for the recordation of chattel mortgages, but the recorder shall enter under the heading 'Remarks' the words, 'Vendor's Lien.'"

The district judge held that Act No. 68 of 1942 did not contemplate nor did it require recordation of a vendor's lien covering the sale of an entire drilling rig which is moved into a parish for the drilling of wells and that it contemplated only the furnishing of supplies to a well already commenced. We concur with the findings of the trial court.

If the recordation of a vendor's **lien** covering an entire drilling rig is not clearly required by Act No. 68 of 1942 then there is no requirement in any such statute for recordation. Article 19, Section 19 of the Constitution of 1921 provides: " * * * Privileges on movable property shall exist without registration of same except in such cases as may be prescribed by law." It is provided in Article 3227 of the Civil Code that "He who has sold to another any movable property, which is not paid for, has preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or without, if the property still remains in the possession of the purchaser. So that although the vendor may have taken a note, bond or other acknowledgment from the buyer, he still enjoys the privilege." It is, therefore, clear that the vendor of movable property retains a first lien and privilege on the property so long as that property remains in possession of the purchaser and can be identified. Registry is not necessary unless a statute so requires.

In Weiss v. Hudson Const. Co., 151 La. **1,** 91 So. 525, 526, the court stated:

"The General Assembly has never passed any general or special law by which a vendor's privilege on movable property is required to be recorded in order to have effect, either as between the parties or as to third persons. Until such a law is passed, a vendor's privilege once created will continue to exist without being recorded, until it is lost or superseded in some manner provided by law. The Civil Code declares a privilege to be a right, which the nature of a debt gives to a creditor, and which entitles him to be preferred before other creditors, even those who have mortgages. Article 3186. And he who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, if the property still remains in the possession of the purchaser. C.C. art. 3227."

We find that Act No. 68 of 1942 did not clearly manifest the recording of a vendor's lien covering the sale of a drilling rig where the rig is to be moved into a parish for the drilling of oil, gas or water wells. The district judge followed the provisions of the Constitution and the Civil Code set forth above and we conclude that his findings are correct.

The trial judge found that the Creighton No. 1 well and Moslow No. 1 belonged to the same field and that as materials were furnished to Muslow No. 1 and the lien filed within the ninety day period from the last delivery that the International Derrick and Equipment Company should participate in the proration. We see no error in this finding.

The suit was provoked by H. & H. Transportation Company. McMurrey was forced into court to protect his interest. The district court assessed him with a part

of the costs. Article 402 of the Louisiana Code of Practice provides:

"If the third person has either a privilege of a higher class than that of the party who has made the seizure, or a special hypothecation duly registered anterior to that of such party; in such case, the third opponent shall be paid for the amount of his claim, together with the interest and costs, and the plaintiff in the cause shall be entitled only to receive the surplus, if there be any."

It is our opinion that costs of court should not be assessed against McMurrey, third opponent and appellee herein.

For the reasons assigned, it is ordered that the claim of Jim McMurrey, intervenor and third opponent, as to his chattel mortgage and vendor's lien in the sum of $14,-000 with 6% interest per annum thereon from April 30, 1945, until paid, less a credit of $4,366.67 paid August 1, 1945, together with 10% additional attorney's fees, should be and the same is hereby recognized as the first privileged and ranking claim on the funds now in the hands of the sheriff realized from the sale of the property in this case on which the said Jim McMurrey has a vendor's lien and privilege and chattel mortgage and that accordingly the said Jim McMurrey be paid said amount from the proceeds of said separate sale of said property by preference and priority over all other creditors and claimants herein; plaintiff to pay all costs.

It is further ordered that the following claims: H. & H. Transportation Company, of $3,300.32 (plus 10% attorney's fees); International Derrick & Equipment Company of $14,715.86 (plus 10% attorney's fees and $3 for preparing and filing lien); Mid Continent Supply Company of $2,240.-67, less $8.27; and the Tri-State Drilling Mud Service, of $1,023.13 (plus 10% attorney's fees and $10 for preparing and filing lien), should be and the same are hereby recognized as liens and privileges for services performed and supplies and materials furnished pursuant to the terms of Act No. 68 of 1942 and of equal rank and consequently ordered paid pro rata from the funds realized in this cause and now in the hands of the sheriff of Claiborne Parish, Louisiana, except from the funds realized from the sale of the property on which Jim McMurrey had a vendor's lien and chattel mortgage as aforesaid, after first deducting from said proceeds this fund's pro rata part of the court costs in this proceeding.

O'NIELL, C. J., does not take part.

McCALEB, Justice (concurring.)

I do not subscribe to the view of the district judge, in which the majority concur, that Act No. 68 of 1942 does not provide for the recording of a vendor's lien and privilege on a drilling rig in order for it to prime the laborers' and materialmen's lien covered therein. Section 2-B of the Act

appears to be clear and unambiguous. It declares:

"That as to movable property said vendor's lien and privilege must exist and be filed for record within seven days after said property, subject to the vendor's lien and privilege, is delivered to the well or wells. * * *"

The district judge thought that Section 2-B was inapplicable to a rig because it is usually delivered to the site before the well is drilled and he concluded in his written opinion that it was impossible for the rig to be delivered to a well before the well existed.

For my part, I cannot give the language of the statute such a narrow interpretation. The words "to the well or wells" are broad enough to include the site where the well is to be drilled. In truth, it is evident to me that the underlying purpose of Section 2-B was to accord to a vendor a longer time (i. e. 7 days) within which to record his superior privilege than that given by the law it replaced. Act No. 145 of 1934. At all events, it seems perfectly obvious that the Legislature did not intend to exempt from recordation vendor's liens on drilling rigs or other movables used in the exploration of oil, gas or water. If it had such a design, it would have been so easy to say so.

On the other hand, I am satisfied that Mr. McMurrey has complied in all respects

with the provisions of Section 2-B of the Act and that none of the objections raised by the opposing materialmen is well founded.

Accordingly, I concur in the decree.