REID, Judge.
This is a suit by James R. Pertuit against Angelloz Oil Company, a partnership composed of Dewey D. Angelloz and Arthur A. Angelloz as well as the individual partners, for $37,874.68 for rental and replacement value of certain oil field tubing used in connection with the operation and drilling of an oil well on lands of the defendants situated in the Parish of Iberville, Louisiana.
On May 9, 1959, the respondents granted a mineral lease to plaintiff and to Merl D. Wiggins, which contained a provision requiring the lessees to commence drilling or workover operations within thirty days from the date of the lease. In accordance with the provisions of the lease Pertuit and Wiggins commenced their workover operations and entered into a contract with Charles Booksh, the owner of a drilling rig, to perform the work in connection with the workover operation; the third party services and supplies and materials, including the casing were to be furnished by Pertuit and Wiggins.
The workover operation progressed to a point where the casing was in the ground, but due to certain financial involvement on the part of the plaintiff and his partner, they were unable to pay Booksh a sum of money which was due him for work on another well. As a result, on July 11, 1959 the plaintiff wrote defendants that due to the action of Mr. Booksh, who had assumed control of the operation by shutting down the rig and refusing to test the well plaintiff was unable to perform under the lease and “I am advising that as of this time I am surrendering my entire interest in said lease. The proper documents to that effect will soon be filed in the records of Iberville Parish -as soon as possible.” The plaintiff never signed ahelease, though requested to do so, and on trial of the case, appeared to have denied that he abandoned his interest, though he admitted he had not fulfilled his obligation to complete the well.
By letter of July 17, 1959, Mr. Wiggins wrote the defendants informing them that he had released his interest in the property in question, and a formal release was subsequently recorded by him.
In order to minimize their loss and to mitigate their damages the defendants took over the operation and worked out an agreement with Mr. Booksh in an effort to complete the well.
The defendants requested of plaintiff the lease or rental of the tubing in question, and a verbal agreement was entered into that day. Said verbal agreement was con *127 firmed by letter of August 6, 1959, which reads as follows:
“Mr. Arthur Angelloz Grosse Tete, Louisiana
RE: Rental of Tubing
Dear Mr. Angelloz:
Confirming our telephone conversations of August 5, 1959, I wish to reiterate as follows:
I agree to rent to you 10,887.5' of 2% N-8Q tubing located on your lease for the purpose of testing said well for the sum of One Hundred and no/100 ($100.00) Dollars per day for a five day minimum. It being understood that this amounts to less than 50% of the regular rental that is charged for rental of such items and that this figure is agreed to for the purpose of using this tubing for testing of the well only.
It is further agreed that in the event that you desire to purchase this tubing after testing said well the sale price to you would be the sum of Nine Thousand Ninety-Five and no/100 ($9,095.-00) Dollars.
It is further agreed that the rental on this tubing will commence at the time the rig is moved on location or at 6:00 A.M. on Monday, August 10, 1959, which ever occurs first. No agreement is made herein beyond the five (5) day rental stated above, except for the sale of said tubing.
Yours very truly, James R. Pertuit.”
JRP/db
Pursuant to the agreement between defendants and Mr. Booksh, sometime around August 10, 1959, work was commenced on testing or completing which took approximately two and one-half days. A producing well resulted, but it produced for only six days. íhe facts are not clear on the point, but apparently there has been no further production from the well.
By letter dated August 14, 1959, plaintiff wrote the defendants referring to his letter of August 6, regarding rental of the tubing and advised that since the minimum rental period, at the latest, would expire the following day at 6:00 o’clock A.M., if the defendants desired to purchase the tubing offered in his letter of August 6, they should advise him of that fact immediately, and make the draft payable to him and Bethlehem Steel Company, jointly, as the Bethlehem Steel Company had not been paid for the tubing and had a vendor’s lien and, therefore, no acceptance of his offer could be made without protection of the vendor’s lien.
On August 14, 1959 the defendants also wrote plaintiff, advising him they were prepared to pay for the pipe in accordance with the written agreement of August 6, but noting they had been called on by a representative of Bethlehem Steel Company who questioned their right to use the pipe, and also noting they had been advised by Mr. Booksh that he had filed a lien against the property.
On August 17, 1959, plaintiff wrote the following letter to defendants:
“Mr. Arthur Angelloz Grosse Tete, Louisiana
RE: Sale of Tubing Offer
Dear Mr. Angelloz:
Your letter (of Aug. 14, 1959), postmarked August 15, 1959, at 5 :00 o’clock P.M. was received today.
You indicated in the above letter that you were prepared to make payment for the pipe, and thereby, I assume you have accepted my offer contained in my letter to you of August 6, 1959, as to the price, and the manner of payment for said pipe contained in my letter of August 14, 1959, postmarked August 14, 1959 and received by you on August 15, 1959, prior to the time you mailed your letter.
That being the case, your acceptance of this offer must necessarily be in accordance with my reiterated offer of August 14, 1959.
*128 Until you make a formal acceptance in accordance with my instructions, the tubing will remain on rental; and, after the five (5) day minimum, the charge will revert to the normal customary rate and conditions that apply to such rental.
Any liens that may be filed are secondary the vendor’s lien and privilege afforded Bethlehem Steel Company, Supply Division, by law.
Delays in this matter will most certainly work to your detriment.
Yours very truly, James R. Pertuit.”
JRP/adb
On August 31, 1959, the defendants wrote plaintiff that they had been advised additional liens had been filed against the pipe; that they wished to pay for the pipe, but their attorney had advised them the only way they could get a clear title to the pipe would be to have the liens adjusted. In answer to this letter plaintiff wrote the defendants on September 11, 1959, as follows:
“Mr. Arthur Angelloz,
Grosse Tete, Louisiana
RE: Rental and/or purchase of Tubing
Dear Mr. Angelloz:
In reply to your letter of August 31, 1959, and in reference to my letters of August 6th, 14th, and 17th, 1959, I wish to make this point emphatically clear:
On or before September 16, 1959, at 9:00 o’clock A.M. you will be able to accept my offer to sell you a string ■of tubing as outlined in my letters dated above. Thereafter, at precisely the above mentioned time, this offer will be withdrawn; and, I do hereby declare that it is withdrawn as of the above mentioned date and time.
In view of my letters outlining payment: the preferred claim and lien of Bethlehem Steel Company, to whom payment is to be made, and the law governing this matter; the last paragraph of your letter of the 31st of August, 1959, becomes a legal absurdity.
Rental at the rate of $.02 per foot per day will continue until acceptance and payment is made or the tubing is returned.
Yours very truly, James R. Pertuit”
JRP/db
The plaintiff, thereafter, sent to the defendants invoices representing the alleged amount due him for rental of the pipe through January 31, 1960, and for the replacement value of the pipe, said invoices totaling $37,874.68.
The record shows that as of the time of defendants’ letter to plaintiff on August 31, 1959, the following liens had been filed against plaintiff: General Mud Service, Inc. in the amount of $2,373.58 filed July 16, 1959; Charles Booksh in the amount of $25,559.73, filed August 10, 1959; K. & W. Fishing Tools, Inc. in the amount of $10,-499.57, filed August 21, 1959; Halliburton Oil Well Cementing Company in the amount of $1,106.01, filed August 28, 1959; and a purported lien filed by plaintiff himself on behalf of Bethlehem Steel Company attempting to assert a vendor’s lien and privilege on the property in question. On March 2, 1960 the plaintiff filed a lien which was amended on March 3, 1960 asserting a claim on his behalf in the amount of $37,-874.68.
The record further shows the tubing in question, which had been in the well hole at the time Mr. Booksh abandoned the well, had been taken out of the well prior to his removal of the rig from the well site, and upon his return to complete the well the tubing was stacked up at the well site. It was replaced in the hole at the time the well was reworked, and was left in the well after it was abandoned and is presumably still there.
It is the plaintiff’s contention that he leased the tubing to the defendants with an *129 option to purchase; that the defendants used the tubing in accordance with the lease; that the defendants used the tubing to run oil out of the well at the time it was a producer, which they were not entitled to do; that the defendants could not or did not pay the purchase price, and elected not to return the pipe to plaintiff, and are still in possession of it placing it out of his control and making it inaccessible; that plaintiff is entitled to be paid rental until the date of the discovery of the loss and to recover damages for the value of the pipe. Plaintiff also contends the defendants did not protest or object to the notification as to the amount of the rental charge.
Defendants deny they owe any rental; they contend that the lease of the tubing was terminated on August 14, 1959, when they notified plaintiff of their desire and intention to purchase the pipe; and defendants claim the agreement to purchase the pipe could not be consummated due to the numerous liens filed against plaintiff; and the agreement was completely abrogated due to the plaintiff’s inability to deliver good and merchantable title.
The defendants filed a reconventional demand alleging breach of contract and slander of title. However, the Trial Judge overruled this reconventional demand, and no appeal or answer to the appeal of plaintiff was filed by the defendants, thus the reconventional demand is now moot.
The Trial Judge found that the defendants were willing to fulfill the provisions of the purchase agreement, but they could not do so because the filing of the liens affected the merchantability of the tubing, making it susceptible to litigation, and, therefore, defendants were not under obligation to accept title to the tubing until the plaintiff cleared the property of the liens. He further found that the assessment of the rental was a unilateral agreement contracted without the consent of the defendants and not in accordance with any provision of the lease-purchase agreement, and the defendants were not obligated to pay any rent in excess of the $500.00 agreed on. In addition, he canceled the lien filed by plaintiff as not being timely filed, granted plaintiff the right to remove the tubing from the premises, subject to any rights of the holders of the liens or privileges affecting the same, and cast both parties for one-half of the cost. It is from that judgment plaintiff has appealed.
The crucial issue in this case is whether or not the defendants are correct in their contention that they were ready to purchase the tubing, but were unable to do so because of the inability of the plaintiff to convey clear and merchantable title.
The letters of August 6 and August 14, 1959, clearly indicate it was the intention of the parties that plaintiff would lease the property for five days at $100.00 per day with an offer to purchase the tubing for the sum of $9,095.00. It is also apparent from defendants’ letters of August 14 and August 31, 1959, that they were prepared to accept plaintiff’s offer to sell the tubing, conditioned on plaintiff’s ability to release the liens. The contention of the plaintiff, in his letters of August 17 and September 11, 1959, that Bethlehem Steel Company had a preferred claim and valid vendor’s lien, is not correct. Article 19, Section 19, of the Louisiana Constitution of 1921, LSA provides that privileges of movable property shall exist without registration of same except in such cases as may be prescribed by law. Furthermore, Article 3227 of the LSA-Civil Code of Louisiana provides as follows:
“He who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or without, if the property still remains in the possession of the purchaser. * * * ”
The Louisiana Supreme Court, in interpreting these articles in the case of H. & H. Transp. Co. v. Owens, 214 La. 985, 39 So.2d 441, held the vendor of movable property retains a first lien and privilege on the *130 property so long as that property remains in possession of the purchaser and can be identified, and registry is not necessary unless a statute so requires.
LSA-R.S. 9:4861 through 9:4867 provides for liens for labor done and supplies furnished in connection with oil, gas and water wells, and requires registry in order to preserve the vendor’s lien. The method of registry is set forth in LSA-R.S. 9:4864, thus:
“As to movable property the vendor’s privilege must exist and be filed for record within seven days after the property subject to the vendor’s privilege is delivered to the well or wells. The vendor’s privilege shall be evidenced by a written instrument signed by the purchaser and when authentic in form or duly acknowledged, shall be filed for record in the records of the parish where the well or wells is located. The effect of filing shall prevent the movables from becoming immovable by nature or destination. The property shall be described in such a manner as to be reasonably subject to identification and the premises on which the property is located or is to be located shall be stated. Filing, rec-ordation, and preservation shall be in the same manner and form and in the same book as is provided by law for the recordation of chattel mortgages, but the recorder shall enter under the heading ‘Remarks’ the words, ‘Vendor’s Privilege.’ ”
The Court in the H. & H. Transp. Co. v. Owens case held that Act No. 68 of 1942, which is the basis for LSA-R.S. 9:4864, applied to the furnishing of supplies to a well already commenced.
The tubing in question was on the premises as early as July 3, 1959, and, at the time of the agreement entered into between the parties no valid vendor’s lien and privilege stood in favor of Bethlehem Steel Company. An examination of the purported vendor’s lien in favor of Bethlehem Steel Company, which plaintiff attempted to assert, will show that in addition to not being timely filed, it was not in proper form as the written instrument signed by plaintiff was not in authentic form or duly acknowledged.
The liens which had been filed at the time of plaintiff’s receipt of defendants’ letter of August 31, 1959 were filed under the provisions of LSA-R.S. 9:4862 which provides that liens filed according to that Article are “superior to all other privileges or mortgages against the property, except taxes or a bona fide vendor’s privilege”, and as at no time was a bona fide vendor’s lien filed, all of the mentioned liens filed, if valid, would prime any claim of Bethlehem Steel Company.
The defendants were correct in their position that plaintiff could not convey a merchantable title to the tubing, however, the question remains whether or not the defendants were under a duty to return the tubing and whether or not their failure to do so would cast them for the rent as maintained by the plaintiff.
The Trial Judge disallowed the plaintiff’s claim for rent over $500.00, maintaining there was no agreement on the part of the defendants to pay this rent, nor was it in accordance with the provisions of the so-called lease-purchase agreement.
There is no question the original negotiations and agreements, entered into between the parties, contemplated that the equipment should be rented for a period of only five days. It is clear that it was the intention of the parties that within the five day period defendants would be able to determine whether or not they had a well, and if so, they would proceed to purchase the pipe. It was not until defendants raised the question of the inability of plaintiff to convey a merchantable title to the tubing that plaintiff raised the question of additional rent. Defendants did not by any affirmative action accept the agreement, and plaintiff’s case on this point is based upon defendants’ inaction in that they did not *131 pay the rent, they did not pay for the tubing, nor did they return the tubing. The plaintiff in the last paragraph of his letter of September 11, 1959 attempted to set the rate of rent “at the rate of $.02 per foot per day will continue until acceptance and payment is made or the tubing is returned.”
It should be pointed out that as the title to the tubing was susceptible to litigation, if the defendants had agreed to lease the pipe, they would have had no assurance that the lienholders would not, at any given time, exercise their lien on the tubing and dispossess defendants of their use of the tubing. Of even more consequence is the fact that since liens had been filed against the tubing in question, the plaintiff was in no position to rent the equipment, and the removal of the property by defendants would have been in derogation of the rights of any of the lienholders. LSA-R.S. 9 4861.2 provides:
“When any lien provided for by this Sub-part shall have attached to the drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks or other structures, it shall be unlawful for any person to remove such property, or any part thereof, or cause the same to be removed from the land or premises where located, at the time such lien attached or otherwise dispose of the same without the written consent of the holder of such lien.”
It is, therefore, the opinion of this Court that the defendants were under no obligation whatsoever to return the said pipe to the plaintiff, and could possibly have been subject to a suit for damages had they permitted said pipe to be taken by the plaintiff.
Plaintiff makes much of the fact that the defendants did not return the pipe from the hole and stack it on the property, thus returning it to the same position it was in prior to renting the said pipe. The record shows that at the time the well was reworked the pipe was not in the hole. However, the plaintiff has failed to prove that at the time he entered into the agreement with the defendants, they knew or had any reason to know that the pipe was not in the hole. This fact is immaterial as far as defendants’ obligation to return the pipe to the plaintiff is concerned, although it might have some bearing on who would bear the burden of the cost of removing the pipe from the hole.
While there is merit in plaintiff’s argument that the defendants should not be permitted to reap the benefit of the use of the pipe without paying for the pipe or returning it, nevertheless, this situation was to a large extent caused by the negligence on the part of the plaintiff in failing to clear the title to the tubing in question and in refusing to take any steps to cancel the liens. We cannot agree with plaintiff’s contention the defendants should have taken these steps by demanding a lien bond or by invoking a concursus proceeding and depositing the sale price in a registry of the Court. Any initiation in this matter should have been done by the plaintiff, the potential seller, and his failure to' do so leaves one to speculate that the plaintiff was aware of the fact that he was unable to deliver a good and merchantable title. Certainly, if the plaintiff had furnished a lien bond, and the defendants had failed to either purchase the tubing or return it the situation might have been different. In addition, there is no evidence in the record to indicate that plaintiff attempted to regain his pipe, and to permit him to sit idly by and charge for rent and the replacement value of the tubing for property upon which he did not have a title is not equitable or in the interest of justice.
The Trial Judge in his written reasons for judgment held that the purported lien filed by plaintiff had not been timely filed under the provisions of LSA-R.S. 9:4862, which provides that said lien must be filed within ninety days from the delivery of the item attempted to be liened, and with this finding we are in accord.
*132 In the Trial Judge’s written reasons for judgment he ruled the plaintiff would be entitled to remove the tubing from the premises of the defendants, subject to the rights of any holders of any liens affecting the tubing. This ruling is not contained in the judgment signed by the Trial Court, and it is the opinion of this Court the judgment rendered should be amended according, and in addition, the cost of removing the tubing from the well to the surface should be born by the defendants. In all other respects the judgment of the Trial Court is affirmed.
Amended and affirmed.